UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| DENNIS BARGHER | * | CIVIL ACTION NO: DIV: |
| v. | * | JUDGE |
| | | |
| MAJOR CRAIG WHITE; | * | MAGISTRATE JUDGE |
| SGT. DAVISON; and | * | |
| MASTER SERGEANT WILKES | * | |

**COMPLAINT FOR DAMAGES/FAILURE TO PROTECT**

NOW INTO COURT, through undersigned counsel, comes DENNIS BARGHER, for all injuries incurred as a result of the actions of defendants in deliberate indifference to constitutional rights or other causes as follows:

1.

This is a civil rights action filed by attorney for Plaintiff, DENNIS BARGHER, a state prisoner, for damages, under 42 U.S.C. § 1983, alleging prison officials' deliberate indifference in their failure to protect plaintiff, in violation of the Eighth Amendment to the U.S. Constitution for failure to protect, failure to intervene, and other wrongs.

2.

**Jurisdiction**

Jurisdiction is conferred upon this court by the provisions of 28 U.S.C. § 1343 (3), the jurisdictional counterpart of 42 U.S.C. § 1983, and 28 U.S.C. § 1331.  Supplemental jurisdiction is conferred upon this court over the state law claims pursuant to 28 U.S.C. § 1367 (a).

3.

**EXHAUSTION**

On April 18, 2015, DENNIS BARGHER was brutally attacked by Johnathan Veal

An ARP was filed EHCC-2015-744, but rejected on October 8, 2015, for multiple complaints.  Another ARP was filed EHCC-2015-819, but rejected on 11/4/2015 on the basis of multiple complaints and too lengthy.  Dennis Bargher was ordered to resubmit the ARP with a one page summary of facts and relief sought.  A letter dated October 22, 2015, from Warden Tanner revealed that EHCC is claiming there are no ARPs pending.  On November 9, 2015, a third ARP was sent.  No response was received within 90 days.

4.

Venue

Venue properly lies in this District pursuant to 28 U.S.C. § 1391 (b)(2) because the events giving rise to this cause of action occurred in Iberville Parish.

5.

Parties

**Plaintiff,**

**DENNIS BARGHER**, DOC 579782, was/is incarcerated at Elayn Hunt Correctional Center (EHCC) during the events described in this complaint.

**Defendants,**

**MAJOR CRAIG WHITE**, is a major, who is employed by the Elayn Hunt Correctional Center and who was acting within the course and scope of his employment during all material times herein and under the color of State law.

**SGT. DAVISON**, is a major, who is employed by the Elayn Hunt Correctional Center and who was acting within the course and scope of his employment during all material times herein and under the color of State law.

**MASTER SARGENT WILKES**, is a major, who is employed by the Elayn Hunt Correctional Center and who was acting within the course and scope of his employment during all material times herein and under the color of State law.

6.

### General Facts

On April 18, 2015, DENNIS BARGHER was housed at the Elayn Hunt Correctional Center, and he was under the care of defendants at all times herein.

7.

On April 18, 2015, DENNIS BARGHER was brutally attacked by Johnathan Veal. The hit was set up by MAJOR CRAIG WHITE. Sgt. Davison assisted with the set up and stood back and laughed while the beating took place and did nothing. Sgt. Davison, is under Master Sgt. Wilkins, who is under MAJOR CRAIG WHITE. Sgt. Davison watched and stood back and laughed during the attack.

8.

Prior to the attack, Warden Guerin had been advised about an extortion scheme ongoing in the EHCC facility concerning another inmate Tony Picou and tools and materials. Warden Guerin advised DENNIS BARGHER not to disclose the extortion scheme to any other person except Lt. Col. Russ to whom DENNIS BARGHER provided a written explanation of the events underlying the extortion scheme. Tony Picou was allowed to extort money from the parents of DENNIS BARGHER in amount of around $7,500.00. The rank officers signed for all of the money being sent to Tony Picou.

9.

A few days later or in the following week, MAJOR CRAIG WHITE called DENNIS BARGHER aside to speak with him.  As ordered, DENNIS BARGHER went into the Security Office where there are no cameras with MAJOR CRAIG WHITE.  MAJOR CRAIG WHITE then began questioning DENNIS BARGHER about the extortion scheme. DENNIS BARGHER informed MAJOR CRAIG WHITE that it was his understanding that he was not to discuss the matter with anyone.  DENNIS BARGHER felt he was being pressured and he was fearful, because MAJOR CRAIG WHITE was involved.

10.

MAJOR CRAIG WHITE informed that the Head of Security Warden McKey had spoken with MAJOR CRAIG WHITE about the extortion scheme and that DENNIS BARGHER was to discuss the matter with him.  DENNIS BARGHER felt forced to disclose what he had told Warden Guerin.

11.

Two days later, Warden Guerin called DENNIS BARGHER into his office and reminded DENNIS BARGHER that he had been ordered not to discuss the matter with anyone.  He was asked about MAJOR CRAIG WHITE and DENNIS BARGHER informed Warden Guerin what had taken place.  Warden Gueran threatened, saying, "You better give the right answer."  "I am as serious as AIDS."

12.

DENNIS BARGHER advised Warden Guerin that MAJOR CRAIG WHITE told DENNIS BARGHER that Warden McKey had ordered the interview between MAJOR CRAIG WHITE and DENNIS BARGHER.  Since Warden McKey outranked Warden

Guerin, DENNIS BARGHER felt he had to follow that order.

13.

A new head warden was coming in named Warden Tanner and they were to hush the matter.

14.

DENNIS BARGHER had made an agreement with Lt. Colonel Russ and MAJOR CRAIG WHITE and he was told that Warden McKey had threatened the other inmate involved in the extortion to keep quiet, as in Tony Picou and others involved in the take. MAJOR CRAIG WHITE even said to Tony Picou that Dennis has an order for tools coming soon. "How about I let Dennis get his tools and then find another way to be rid of him."

15.

DENNIS BARGHER was threatened that if the other inmate did not give DENNIS' father payment then the issue would escalate and the other inmate would be sent to Camp J. DENNIS BARGHER then made an agreement with the other inmate to attempt to obtain the money.

16.

After Colonel Russ and Captain White left, the other inmate Tony Picou stated that he was not going to pay DENNIS BARGHER or his father a dime. Three weeks went by before DENNIS BARGHER went to Capt. White for help. Fearful, DENNIS BARGHER went to Capt. White and so informed.

17.

MAJOR CRAIG WHITE wanted to go talk to the other inmate to exert pressure. For his own safety, DENNIS BARGHER asked that Capt. White not do so. MAJOR CRAIG

WHITE then said he would go and get the tools and material and put them in storage.

18.

After weeks passed, DENNIS BARGHER went to Colonel Russ and wrote down the agreement that he had with MAJOR CRAIG WHITE that Capt. White did not follow up on and he gave that to Colonel Russ. MAJOR CRAIG WHITE found out and was very angry.

19.

DENNIS BARGHER went to his social worker, who could not help with legal matters.

20.

All of this was hidden from the new Warden Robert Tanner and the new Colonel on Unit One Colonel Betty Johnson.

21.

The next day after DENNIS BARGHER finished work as a tier orderly on G-1-D, Major LaSard and Lt. Colonel Russ came in and ordered him to get up. Major Lasard said do not put your boots on, rack away.

22.

Major LaSard produced a white glove finger with a white substance. Major LaSard opened the glove and broke it all over the bed. Major LaSard and Lt. Col. Russ looked at each other and Lt. Colonel Russ said hold on. Lt. Colonel Russ then went outside the dorm and about 30 seconds later came back in and went to the podium. The tier sergeant in the dorm walked over and Lt. Colonel Russ said go back over to the TV room.

23.

DENNIS BARGHER watched as Lt. Colonel Russ put the blue gloves on and produced a vile like substances and poured it on the a green leafy substance. Lt. Col.

Russ walked passing by DENNIS BARGHER and with the vial still in his hand and him still wearing the blue gloves, with the vial in one hand, Capt. White opened the vial. Major LaSard smirked. Russ said to LaSard what do know this plant? LaSard said, "I have seen it growing outside my office this morning." Lt. Coln Russ said it was MoJo now.

24.

Major LaSard put it in the blue glove and broke the finger off and stuffed rolling papers in the glove also.

25.

Just in time Colonel Johnson showed up and questioned DENNIS BARGHER if it was his. DENNIS BARGHER responded, "No." She said we will have it tested. DENNIS BARGHER later stated in his polygraph that the substance looks like a ground fern. Initially DENNIS BARGHER was denied a polygraph by Major LaSard, but Col. Johnson allowed it.

26.

DENNIS BARGHER offered to take a polygraph. On April 18, 2015, he was locked up in Beaver 2, C-1.

27.

There he met Antoinio Bourgeois who advised that Capt White was also trying to get DENNIS BARGHER.

28.

MAJOR CRAIG WHITE had put a hit out on DENNIS BARGHER.

29.

Since Bourgeois refused to assist Capt. White, White locked him down. MAJOR

CRAIG WHITE had hit out on DENNIS BARGHER.

30.

In the absence of a doctor's order DENNIS BARGHER was taken off of his psych and other medications, which put him into withdrawals. By then Johnathan Veal was beginning to threaten him saying that Capt. White (Major) showed him on paper that DENNIS BARGHER pointed Johnathan Veal out as the inmate who had assaulted another inmate. DENNIS BARGHER said no such thing ever. Veal began to threaten DENNIS BARGHER'S life.

31.

Col. Johnson called DENNIS BARGHER to the office and asked if he knew anyone who would want to set him up and DENNIS BARGHER said, yes. He could not say much because Lt. Colonel Russ was in his office that adjoins Colonel Johnson's office.

32.

He was brought back to Beaver 2 and was alone in his cell, before he received his polygraph.

33.

Prior to returning to his cell, MAJOR CRAIG WHITE told Johnathan Veal that DENNIS BARGHER was a rat and had to die. After DENNIS BARGHER left to go take the polygraph, Sgt. Davison and Master Sargent Wilkes placed Jonathan Veal in DENNIS BARGHER's cell.

34.

Sgt. Davison and Master Sargent Wilkes knew that Jonathan Veal was a known enemy of DENNIS BARGHER.

35.

When DENNIS BARGHER completed his polygraph, he went back to Beaver 2 Dorm to Cell 1, he was told by Sargent Davison that he had a new cellmate.

36.

DENNIS BARGHER told him that he was not supposed to be with another cellie by order of Head Warden Robert Tanner.

37.

Sargent Davison said, "Get the F in the cell!"

38.

When DENNIS BARGHER was uncuffed before he went into the cell which was odd. When he entered, the cellie was in the corner of the cell and turned away. DENNIS BARGHER was frightened.

39.

Once he was in, Jonathan Veal jumped on DENNIS BARGHER and began striking him, kicking him and he had a weapon in his hand. DENNIS BARGHER suffered serious injury. Sergeant Davison laughed and finally said that is enough.

40.

Sgt. Davison grabbed DENNIS BARGHER and put him in the shower and told him to clean up. Master Sargent Wilkins said what happened.

41.

Before DENNIS BARGHER took his polygraph, Master Sergeant Wilkins had told DENNIS BARGHER that Johnathan Veal told her that he was going to harm DENNIS BARGHER, but that he should not worry because DENNIS BARGHER was being

investigated and Veal would not hurt him.

42.

DENNIS BARGHER was sent to New Orleans and then he was placed in skilled nursing and moved to HSU-C for observation. All drug charges against DENNIS BARGHER were dropped after the beating.

43.

DENNIS BARGHER no longer has hearing in one ear. He has constant neck, head and back pain and his eyes go blind at times. He has difficultly sleeping and functioning. He had a broken jaw and broken teeth. He has suffered emotionally.

44.

Johnathan Veal also filed or pressed charges for being set up to beat up DENNIS BARGHER.

45.

Word spread quickly that MAJOR CRAIG WHITE was behind the hit. MAJOR CRAIG WHITE was seen and heard whispering to Johnathan Veal and inciting him to harm DENNIS BARGHER.

46.

MAJOR CRAIG WHITE told Johnathan Veal that DENNIS BARGHER fingered him as the man whom stabbed a man in G-10D Tier and Johnathan Veal wanted to get DENNIS BARGHER for being a snitch and a rat. Everyone on the tier heard Johnathan Veal call DENNIS BARGHER "Master Splinter," who is a t.v. character rat. DENNIS BARGHER and other inmates witnessed MAJOR CRAIG WHITE come to the tier and speak with Johnathan Veal on multiple occasions.

47.

Death threats were coming to DENNIS BARGHER from Johnathan Veal. Johnathan Veal told DENNIS BARGHER that he would have him soon.

48.

All Defendants were fully aware of the confrontation and hostility between DENNIS BARGHER and Johnathan Veal.

49.

Lt. Col. Russ and MAJOR CRAIG WHITE had motive to harm DENNIS BARGHER. The mojo incident provided the opportunity to put Johnathan Veal in the cell with DENNIS BARGHER.

50.

MAJOR CRAIG WHITE and all Defendants knew that Johnathan Veal posed a substantial risk of harm to DENNIS BARGHER and others, but both Capt. White and Sgt. Davison recklessly and callously disregarded policy and then failed to intervene.

51.

Photos were taken of his facial injuries after he was cleaned up and taped up.

52.

The Defendants caused the attack by setting the whole thing up and then deliberately stood by and while DENNIS BARGHER was being assaulted.

53.

DENNIS BARGHER suffered a broken jaw and two teeth being broken off at the gum line. The jaw required surgery. He had throbbing pain for 2-3 days and could not sleep. He has facial nerve damages and the left side of is lip, and sometimes the whole

left side of his face, is numb due to the damage to the motor nerve. He has permanent damage to the left and right cheekbone area and his very sensitive. The right side of his upper jaw pops and gives him vertigo, which makes him dizzy and off balance and he has a sinking lost feeling. He suffered disfigurement. He is on multiple medications and suffers every day. Additionally he has a chipped tooth in the front and it is very sensitive to hot and cold. He lost another tooth that was broken. He has neck strain and pain. He had bruised ribs that rendered breathing difficult. He suffered from a sharp headaches for a month and now nearly daily. He has had bad dreams and fears being attacked. He is being seen for his mental difficulties by a social worker.

54.

DENNIS BARGHER undergoes mental health treatment in the form of counseling and medication in attempts to control the emotional distress, pain, and anxiety as a result of the vicious attack. DENNIS BARGHER had to reintroduce his medication dosages back to normal, which was not easy and which caused additional suffering after having his medications cut off cold turkey by Capt. White.

55.

La. R.S. 15:829, which allows the Secretary of the Louisiana Department of Public Safety and Corrections to enact rules and regulations governing inmates and guards, provides that corporal punishment of inmates is forbidden. See also, LAC 22:3309 (B) and see Department Regulation No. c-02-006 (6)(b)(c)(d).

> A. The secretary of the Department of Public safety and Corrections shall prescribe rules and regulations for the maintenance of good order and discipline for inmates sentenced to the legal custody of the department whether housed in local or state facilities, which rules and regulations shall include procedures for dealing with violations thereof. A copy of such rules and regulations shall be furnished each

inmate. **Corporal punishment is prohibited.**

56.

Rule 3 of Part I at page 33 of the Corrections Services Employee Manual of the Louisiana Department of Public Safety and Corrections prohibits guards from abusing an offender for any reason by any of the following: verbal abuse; harassment; damaging, destroying, or otherwise abusing an offender's belongings through willful act or gross negligence; and physical abuse.

57.

Retaliating by use of force and violence by a fellow inmate and known enemy is unreasonable *per se* and same constitutes a use of force that is excessive and unnecessary.

58.

The Constitution, statutes, rules and regulations enacted to protect inmates were disregarded.

59.

It was unreasonable and a violation of policy for Defendant(s) to use force on DENNIS BARGHER as punishment and when he was not resisting or, otherwise, commit any crime.

60.

Use of force was unnecessary and excessive to any need and/or there was no need for use of force under the 4th and 8th Amendments and the circumstances presented. There was a deliberate indifference to a serious medical condition and/or torture

implemented as punishment.

61.

One or more of the Defendants acted in a manner that was in wanton or reckless disregard or with malice or willfulness to cause injury and violate constitutional rights.

62.

Violating numerous inmates rights and failure to follow rules and regulations implemented for the protection of inmates constitutes deliberate indifference.

63.

In the alternative, where the guards may have committed the same acts on other inmates is unknown at this time, but where same may be shown, or where ratification of the actions of guards may be shown, or violation of or failure to implement any applicable policies or procedures, there may be other persons at fault where same constitutes a deliberate indifference to the constitutional rights of a detainee, same would evidence a callous indifference and repeated actions warranting punitive damages. All rights are reserved herein to name additional defendants pending discovery.

64.

The following claims for relief are pled collectively and in the alternative.

65.

**FIRST CLAIM FOR RELIEF**

**SECTION 1983 VIOLATION OF CIVIL RIGHTS**

Plaintiff seeks relief pursuant to 42 U.S.C. § 1983.

Under the color of State and local law, Defendants violated the Plaintiff's 4th, 8th

and/or 14th Amendment right to be free from use of corporal punishment, unnecessary and/or excessive force while being seized and/or detained by the Defendants.

66.

**FAILURE TO PROTECT/FAILURE TO INTERVENE**

The failure of Defendants to act on their knowledge of the substantial risk of serious harm to Plaintiff violates the Plaintiff's Eighth Amendment right to be free from deliberate indifference to his safety.

67.

The failure of Defendants to intervene and stop or arrest the beating was a result of the deliberate indifference exercised by the aforementioned defendants, Plaintiff suffered through a vicious life threatening attack and now suffers extreme emotional distress, mental anguish, and physical pain from this incident.

68.

Guards are prohibited by state law from using corporal punishment on prisoners. La. R.S. 15:829.

69.

Use of corporal punishment was prohibited and/or force was unnecessary and/or excessive to any need and/or there was no need for use of force under the 4th or 8th Amendment and the circumstances presented.

70.

The guards violated multiple state laws and rules and regulations.

71.

The conduct of the Defendants was extreme and outrageous.

72.

Defendants acted in a manner that was in wanton or reckless disregard or with malice or willfulness to cause injury and violate constitutional rights.

73.

**SECOND CLAIM FOR RELIEF COSTS AND ATTORNEY FEES**

Plaintiffs seeks relief in the form of attorney's fees and cost pursuant to 42 USC § 1988 and punitive damages pursuant to 28 USC § 1983.

74.

**THIRD CLAIM FOR RELIEF**

**NEGLIGENCE**

In the alternative, the DEFENDANT knew or should have known that placing a known enemy who was violent in a confinded cell with someone who he had sworn to injury would was likely to result in the injury to one or more of them.

75.

Defendants failure to maintain safety by keeping an aggressive inmate in lock down and away from another sworn enemy inmate would result in harm to others. DEFENDANTS had a duty to protect DENNIS BARGHER from the other inmate, which duty was breached.

76.

DENNIS BARGHER seeks relief under La. C.C. arts. 2315 and 2321 of the Louisiana Civil Code, which injuries were occasioned by the intentional and/or negligent acts and/or omissions of the Defendant(s) herein, and article 2317..

77.

## INJURIES

DENNIS BARGHER suffered acute injury and multiple serious and prolonged injury which include but are not limited to his arm, neck, back, shoulder, and face, discomfort, humiliation, pain and suffering, mental and emotional injury, medical and pharmaceutical expenses, and future lost wages.

78.

## REQUEST FOR JURY TRIAL

Plaintiff prays for a jury trial on all issues.

Wherefore, Plaintiff prays that the Defendants be cited to appear and answer and that after resolution of this matter that this Honorable Court enter Judgment in favor of the Plaintiff against the Defendants with legal interest from the date of demand as follows:

- a.   Physical pain and suffering;
- b.   Physical injuries;
- c.   For emotional and mental distress, pain and suffering, humiliation, embarrassment and loss of employment opportunities;
- d.   Medical, hospital and pharmaceutical bills and services past, present, and future;
- e.   inconvenience;
- f.   Future lost wages;
- g.   All litigation expenses;
- h.   For attorneys fees and for costs as may be allowable by law; and

j.	For such other relief that the Court may deem just, equitable, or proper.

>Respectfully submitted:
>
>s/ Donna U. Grodner
>Donna U. Grodner (20840)
>GRODNER & ASSOCIATES
>2223 Quail Run, B-1
>Baton Rouge, Louisiana 70808
>(225) 769-1919 FAX (225) 769-1997